**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ANDRELL BROWN, ANTONIO BROWN, and KIM LATRICE WILLIAMS** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **CASE NO. 4:23-CV-1115** |
| **LASALLE CORRECTIONS WEST, LLC d/B/A PRAIRIELAND DETENTION CENTER; JIMMY JOHNSON; LEANDRO HERNANDEZ; and ARMANDO CASTRO** | ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## COMPLAINT
### (Demand for Jury Trial)

Plaintiffs Andrell Brown, Antonio Brown, and Kim Williams complain of and seek damages from (1) LaSalle Corrections West, LLC d/b/a Prairieland Detention Center, (2) Jimmy Johnson, (3) Leandro Hernandez, and (4) Armando Castro, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and Section 1981 of the Civil Rights Acts of 1866, 42 U.S.C. §1981 ("Section 1981"). For these causes of action, Plaintiff states as follows:

## PARTIES

1.      Plaintiff  Andrell Brown is a Black female who resides in Fort Worth (Tarrant County), Texas and, at all material times, worked out of Defendant LaSalle's correctional facility in Alvarado, Texas.

2.      Plaintiff Antonio Brown is a Black male who resides in Fort Worth (Tarrant County), Texas and, at all material times, worked out of Defendant LaSalle's correctional facility in Alvarado, Texas.

3.      Plaintiff Kim Latrice Williams ("Williams") is a Black female who resides in Arlington (Tarrant County), Texas and, at all material times, worked out of Defendant LaSalle's correctional facility/detention center located in Alvarado, Texas.

4.      Defendant LaSalle Corrections West, LLC d/b/a Prairieland Detention Center ("LaSalle" or "Defendant") is a domestic limited liability company organized under the laws of the State of Texas, with its principal place of business located in Ruston, Louisiana.  LaSalle may be served with process by serving its registered agent, Tim Kurpiewsky, located at 26228 Ranch Road,12, Dripping Springs, Texas 78620.

5.      Defendant Jimmy Johnson ("Johnson") is a White male who, at all material times, served as the warden of LaSalle Corrections West, LLC d/b/a Prairieland Detention Center and who, on information and belief, resides in Covington, Texas. Defendant Johnson may be served with process at his residence located at 251 Hill County Road 4403, Grandview, Texas 76050-7010.

6.      Defendant Leandro Hernandez ("Hernandez") is a Hispanic male who, at all material times, served as the assistant warden of LaSalle Corrections West, LLC d/b/a Prairieland Detention Center and who, on information and belief, resides in Alvarado, Texas. Defendant Hernandez may be served with process at his place of business located at LaSalle Prairieland Detention Center, 1209 Sunflower Lane, Alvarado, Texas 76009.

7.      Defendant Armando Castro ("Castro") is a Hispanic male who, at all material times, served as a chief/supervisor at LaSalle Corrections West, LLC d/b/a Prairieland Detention

Center and who, on information and belief, resides in Hillsboro, Texas. Defendant Castro may be served with process at his place of business located at LaSalle Prairieland Detention Center, 1209 Sunflower Lane, Alvarado, Texas 76009.

## JURISDICTION AND VENUE

8.      Plaintiffs seek relief for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and Section 1981 of the Civil Rights Acts of 1866, 42 U.S.C. §1981. Accordingly, this Court has jurisdiction under 28 U.S.C. § 1331.

9.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the Plaintiffs state law claims.

10.     At all times material hereto, Defendant LaSalle Corrections, LLC conducted business in Texas and was doing business in the State of Texas by employing Plaintiffs in Alvarado, Texas. The causes of action asserted herein arose from and are connected to purposeful acts committed by Defendants during Plaintiff's employment in Alvarado, Texas.

11.     A substantial portion of the acts and omissions giving rise to Plaintiff's claims occurred in Johnson County, Texas and all three Plaintiffs reside in Tarrant County, Texas. Venue is proper in this district and division under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES AND REMEDIES

12.     Plaintiffs timely filed with Equal Employment Opportunity Commission ("EEOC") charges of discrimination and retaliation against Defendant LaSalle.

13.     Plaintiff  Andrell Brown has requested her notice of right to sue from the EEOC, but it has not been received as of this filing. Accordingly, Plaintiff Andrell Brown will amend following receipt of her notice of right to sue in order to join the Title VII claim.

14.     Plaintiff Antonio Brown has requested his notice of right to sue from the EEOC, but it has not been received as of this filing. Accordingly, Plaintiff Antonio Brown will amend filing receipt of his notice of right to sue in order to join the Title VII claims.

15.     Plaintiff Kim Williams received her notice of right to sue from the EEOC on August 9, 2023 and timely filed this Complaint within those 90 days of receiving that notice of right to sue.

## FACTUAL BACKGROUND

### *General Background*

16.     Defendant LaSalle is a developer and operator of correctional facilities throughout Louisiana, Texas and Georgia. According to its website, LaSalle claims to manage 18 facilities with a total inmate capacity of 13,000 throughout those states.

17.     Defendant LaSalle also claims to provide equal employment opportunities without regard to race, color, national origin, or ancestry (among other things) and purports to prohibit "any form of unlawful employee harassment or discrimination based on these characteristics. (See: https://lasallecorrections.com/workplace/).

18.     Defendant Lasalle is an "employer" as that term is defined in 42 U.S.C. § 2000e(b) and Texas Labor Code § 21.002(8).

### *Andrell Brown*

19.     Plaintiff Andrell Brown was employed as a Detention Officer with LaSalle from January 2020 through May 2023, at which time she was constructively discharged for having previously complained of racial harassment.

20.     In September 2021, when Plaintiff Andrell Brown was eligible for a move to a different and more desirable shift, Defendants Johnson, Castro, and Hernandez attempted to prevent her shift change and required her to seek that shift change through union efforts and

challenges. However, when Caucasian and Hispanic employees had requested shift changes for which they were eligible, Defendant Johnson had approved those requests without requiring an official union action.

21.     After successfully obtaining her change to the new shift (Shift 1B) though union action, Plaintiff Andrell Bown noticed that Black Detention Officers were typically being assigned to more aggressive and difficult security stations, while Caucasian and Hispanic security offers were typically being assigned the more desirable, less-difficult stations.

22.     It was during this time that Plaintiff Andrell Brown began hearing racial slurs and other derogatory language regarding Black employees being used in the workplace.

23.     In June 2022, several Detention Officers heard Defendant Castro remark to one of the training managers in a training class that he (Castro) did not want "the guy with dreads" assigned to his shift because "he has enough of them kind already on my shift."

24.     In September 2022, Plaintiff Andrell Brown and others became aware of social media posts made by Defendant Castro that contained racially derogatory comments directed toward Blacks. One of them stated: "Not our Queen, not our circus. We have our own monkey and circus, thank you." This is but one example of his racial animus towards Black employees.

25.     Also in September 2022, Defendant Castro berated Plaintiff Andrell Brown and a small group of Black Detention Officers, threatening them with their jobs and telling them that they should "go work for McDonald's." Plaintiff Andrell Brown, along with her co-workers, complained to Defendants' Johnson and Hernandez regarding Castro's conduct /behavior, however, no investigation was ever conducted nor was any remedial action ever taken.

26.     In May 2023, after filing her Charge of Discrimination with the EEOC alleging race harassment and discrimination, Plaintiff Andrell Brown learned of derogatory remarks still

being made about her by Defendant Castro in a main control briefing. She learned of these remarks directly from the attendees at that briefing.

27.    Plaintiff Andrell Brown suffered—and continues to suffer—severe anxiety and stress over her treatment, and the treatment of other Black Detention Officers as a result of the conduct and/or omissions of Defendants Castro, Johnson, and Hernandez. To further compound the situation, Plaintiff Andrell Brown was never notified of any results or conclusions from any Human Resources investigation, leading her to believe that no such investigations were ever conducted.

28.    The entirety of the comments and conduct directed toward Plaintiff Andrell Brown (as well as the other Black Detention Officers on staff) were wholly inappropriate and entirely unwelcome, and did nothing but create a hostile and untenable work environment which neither Plaintiff Andrell Brown nor any reasonable individual could be expected or required to endure.

29.    After trying in vain to cope with the racial harassment at work and LaSalle's abysmal failure or refusal to remedy that situation, Plaintiff Andrell Brown concluded that the situation would never improve. Plaintiff Andrell Brown decided that she could no longer continue working there to the detriment of her mental and physical well-being. The stress and anxiety had become too much to bear, and she submitted her resignation letter to LaSalle in March 2023, having been constructively discharged.

***Antonio Brown***

30.    Plaintiff Antonio Brown was employed as a Detention Officer with LaSalle from January 2018 through September 2023, at which point he was terminated/constructively discharged.

31.     Beginning in August 2019, Plaintiff Antonio Brown was subjected to racial slurs and derogatory language directed toward Black employees. For example, in August 2019, Defendant Castro referred to Plaintiff Antonio Brown and some of his Black co-workers as "a bunch a monkeys living in the jungle. The following month (September 2019), we were referred to by Defendant Castro as "rats and termites."

32.     A complaint regarding Defendant Castro's actions and comments was made to Defendant Hernandez, who advised that the complaint must be made in writing. That complaint was submitted in writing to the human resources manager (Tonya King). However, no investigation was ever conducted and no remedial action was ever taken.

33.     Repeatedly, Black employees were treated disparately than Caucasian or Hispanic counterparts. For example, a Black Detention Officer was terminated after purportedly "falling asleep on the job" while a white officer who had been caught sleeping on shift over 20 times was not. Coincidentally (or not), the Black officer who was terminated was also the same Black officer that had submitted a written complaint regarding Defendant Castro's racial slurs. In addition, Caucasian and Hispanic officers were typically assigned to more desirable, less-difficult security stations within the facility.

34.     In April 2023, Defendant Antonio Brown filed his Charge of Discrimination against LaSalle with the EEOC/Texas Workforce Commission, alleging discrimination and harassment on the basis of race, religion, disability, and retaliation.

35.     On July 27, 2023—approximately 3 months after filing his Charge of Discrimination against LaSalle—Plaintiff Antonio Brown was allowed by Defendant Johnson to convert to part-time status at LaSalle. The request for part-time status was an attempt by Defendant

Antonio Brown to lessen the severity of the harassment and discrimination and the impact on his mental and physical well-being.

36.    Defendant Johnson informed Plaintiff Antonio Brown that it would be necessary for him to submit a full-time employee letter of resignation, which he did on July 27, 2023. The effective date of that full-time employment resignation was August 11, 2023, after which Plaintiff Antonio Brown would continue working as a part-time employee at LaSalle. That letter was submitted to Defendants Johnson and Hernandez, as well as a human resources manager (Tonya King).

37.    On August 21, 2023 (10 days after the effective date of the part-time status), Defendant Johnson sent Plaintiff Antonio Brown a letter indicating that he had "reconsidered" Plaintiff's part-time status and that he was no longer being permitted to work part-time. Plaintiff Antonio Brown filed a grievance at LaSalle regarding that recission of the part-time position and was letter notified (by letter dated September 11, 2023, from Assistant Regional Warden Robert Parker) that Defendant Johnson's rescission of the part-time status was being upheld and that the effective date of my termination was being retroactively designated as August 13, 2023.

38.    Plaintiff Antonio Brown was told that the rescission of his part-time employment status was due to the lack of part-time staffing in the staffing plan at Prairieland Detention Center. However, Plaintiff Antonio Brown is aware of other officers at the detention center working part-time, including Officer Van Ryan (a Caucasian male) and another Caucasian male who happens to be the son of Tonya King (the HR manager).

39.    The stated reason for my termination is a pre-text for retaliation by Lasalle in response to Plaintiff's Antonio Brown's prior complaints of harassment and his April 2023 Charge of Discrimination.

40.     Plaintiff Antonio Brown suffered—and continues to suffer—severe anxiety and stress over her treatment, and the treatment of other Black Detention Officers as a result of the conduct and/or omissions of Defendants Castro, Johnson, and Hernandez. To further compound the situation, Plaintiff Antonio Brown was never notified of any results or conclusions from any Human Resources investigation, leading him to believe that no such investigations were ever conducted.

***Kim Williams***

41.     Plaintiff Kim Williams has been employed as a Detention Officer with LaSalle since October 2018, during which time she has served as a union representative for non-management Detention Officers who are members of a collective bargaining unit at LaSalle.

42.     In the course of her duties, Plaintiff Williams has been called upon numerous times to intervene with management on behalf of Black co-workers and collective bargaining unit members who have received unfair treatment on the basis of their race.

43.     For example, in August 2021, Plaintiff Williams was asked to speak to management regarding the unfair treatment of a Black female Detention Officer by Defendant Castro. Plaintiff Williams reported conduct of Defendant Castro to Defendant Johnosn, who indicated that he would speak to Defendant Castro. Defendant Castro later approached Plaintiff Williams and demanded to know what she (Plaintiff Williams) had told the warden. He made it clear to Plaintiff Williams that her daily duties were going to be questioned and scrutinized going forward.

44.     On August 30, 2021, following that encounter, Defednants Castro and Hernandez, unnecessarily and without provocation, harassed Plaintiff Williams over her daily work routine. On September 9, 2021, Plaintiff Williams grieved the denial of a Black Detention Officers' request

to move to the day shift, based on the fact that such requests by White Detention Officers were routinely approved. That grievance was upheld and the Black officer was moved to his requested shift. Yet it incited further retaliatory conduct by Defednants.

45.    Plaintiff Williams' husband, who is also employed at LaSalle, began received targeted unfair treatment by Defendants.  For example, on September 13, 2021, Defendant Castro began unnecessarily harassing Plaintiff Williams's husband regarding his uniform and commented that he would like the husband "to wash his [Castro's] car because he's doing such a good job washing the company vans."

46.    On October 27, 2021, Plaintiff Williams intervened as union steward with Defendant Johnson regarding a situation where a Black officer was bypassed for a requested shift change in favor of a White officer. After establishing with evidence that the Black officer had requested the shift change prior to the White officer and questioning the denial of a Black officer's request, Defendant Johnson became angry and made it clear to Plaintiff Williams that he was upset with her for having challenged him on the issue of race preference in the shift request. And the retaliation continued.

47.    On November 2, 2021, Plaintiff Williams grieved the sudden termination of a Black officer, ostensibly for abusing the time and attendance policy. Plaintiff Willams established that the Black officer had been treated differently than White and Hispanic employees under similar circumstances, and also established that the time and attendance cards of the White and Hispanic LaSalle supervisors reflected the same violations for which the Black officer had been terminated. Based on that showing, Defendant Johnson had no choice but to suspend the time and attendance policy and reinstate the Black officer, with back pay. Yet the retaliation continued.

48.    The following day—November 3, 2021—Plaintiff Willaims was issued a written disciplinary warning for "leaving her post without proper relief," based solely on the fact that Plaintiff Williams had left her workstation to take her restroom break without obtaining a relief officer to replace her in the workstation. After Plaintiff Williams pointed out that no other shifts were required to obtain replacement officers in order to take restroom breaks. She was advised that that the rule with regard to her and her shift co-worker at her workstation. Plaintiff Willaims grieved the warning to Defendant Johnson, who summarily denied the grievance, stating that he did not "believe" that anyone had harassed or retaliated against her. On November 23, 2021, unable to locate a relief officer when she needed a restroom break, Plaintiff Williams soiled herself in order to avoid violating a policy that was only applied to her in retaliation for having previously reported disparate treatment of Black employees.

49.    After her accident in November 23, 2021, Plaintiff Williams because the subject of public ridicule at the facility and Defendant Johnson told Plaintiff Willaim's Supervisor (Sgt. Uddin) that Defednants Hernandez and Castro took it to far and had gone "rogue" on him. An email was sent to Defendant Johnson from the union stating that if the retaliation against Plaintiff Williams continued, complaints would be filed with the appropriate government agencies to address the retaliation. Defendant Johnson stated that he would make sure that the retaliation was addressed. It most certainly was not.

50.    On December 15, 2021, Plaintiff Willaims reported to work and learned that her position had new post orders to reflect that she (Plaintiff Williams) now had to be relieved to use the bathroom or leave her post.

51.    On February 11, 2022, Plaintiff Willaims reported by email to Defendant Johnson and LaSalle's human resources manager that she was the target of race harassment by one of her

co-workers. Although Defendant Johnson stated that he would "send it to his supervisor" to determine how to handle the situation and that the co-worker would be terminated, this never happened. Instead, the harassing officer was simply moved to another shift and Plaintiff Williams was still required to interact with the harassing officer when she took overtime assignments on the other shift.

52.     On April 18, 2022, Plaintiff Williams filed her charge of Discrimination with the EEOC, alleging race harassment/discrimination and retaliation for the events described hereinabove. The charge was filed as a continuing action charge, as the discrimination/harassment and retaliation was on-going.

53.     On May 2, 2022, Plaintiff Williams sent an email concerning racial discrimination against three Black officers. Defendant Castro again retaliated, complaining (without foundation) later that month regarding Plaintiff Williams' performance.

54.     On June 23, 2022, Plaintiff Williams reported racist comments made by Defendant Castro during a training session and pointed out that Castro had also commented that "it is always the Black officers complaining about everything." Nothing was done.

55.     On January 17, 2023, Plaintiff Williams was asked for her keys and badge and escorted out of the facility and placed an administrative leave with pay until further notice. She was told that she had several instanced of poor job performance. The process was purely for retaliatory embarrassment and humiliation, as Plaintiff Williams was the only officer that was asked to return a badge and keys and escorted out when placed on an administrative leave.

56.     Two days later, on January 19, 2023, Plaintiff Williams was called back to the facility and issued three disciplinary warnings, all premised on false statements. She was suspended for one day without pay and placed on probation for six months. Plaintiff Williaims filed

an appeal of the warnings and was advised that she would be notified of the decision. As of this filing, no decision or explanation has been provided to her.

57.     The entirety of the comments and conduct directed toward Plaintiff Williams (as well as the other Black Detention Officers on staff) were wholly inappropriate and entirely unwelcome, and did nothing but create a hostile and untenable work environment. Plaintiff Williams has suffered—and continues to suffer—severe anxiety and stress over her treatment, and the treatment of other Black Detention Officers as a result of the conduct and/or omissions of Defendants Castro, Johnson, and Hernandez

58.     On September 5, 2023, Defendant Johnson was either fired or resigned—he no longer works for LaSalle as of that date. Two weeks following his departure, Plaintiff Williams received a call from Defendant Johnson apologizing for the things that happened between him and Plaintiff Williams.

## CAUSES OF ACTION

### A.     Count One: Hostile Work Environment Harassment (Race) under Title VII (Defendant LaSalle Corrections West, LLC)

59.      Plaintiffs repeat and reallege, as if fully set forth herein, the allegations of the preceding paragraphs.

60.     Plaintiff Kim Williams alleges that Defendant LaSalle, as her employer, subjected her to a racially hostile work environment in violation of § 42 U.S.C. § 2000e-2 *et seq*.

61.     Plaintiff Kim Williams is a member of a protected class (Race: Black). Plaintiff Kim Williams was subjected to unwelcome and hostile verbal conduct of a racial nature which has continued throughout her employment. 42 U.S.C. § 2000e(f).

62.     Defendant LaSalle is an employer within the meaning of Title VII. 42 U.S.C. § 2000e(b).

63.     All conditions precedent to filing this action for discrimination under federal law have been met.

64.     Defendant LaSalle, by and through the actions of its employee managers and supervisors, violated Title VII, as amended, by harassing Plaintiff Kim Williams and/or creating a racially hostile work environment, and/or discriminating and/or retaliating against Plaintiff Kim Williams in connection with compensation, terms, conditions or privileges of employment because of her race.

65.     Defendant LaSalle, by and through the actions of its employee managers and supervisors, maliciously and recklessly violated its own established rules and procedures to inflict pain and suffering upon Plaintiff Kim Williams.

66.     Defendant LaSalle allowed a racially hostile work environment that targeted Black employees to persist.

67.     Plaintiff Kim Williams complained about the racially-charged misconduct in accordance with Defendant LaSalle's policies and procedure but her complaints were ignored and Defendant LaSalle failed or refused to investigate. Defendant LaSalle failed to exercise reasonable care to prevent the aforementioned described racial harassment and hostile work environment from occurring.

68.     Plaintiff Kim Williams would not have been subjected to the harassment but for her race, as evidenced by the type of remarks and conduct directed towards her.

69.     The harassment inflicted on Plaintiff Kim Williams was severe and pervasive and altered the terms and conditions of her employment and created a hostile and abusive work environment.

70.     Plaintiffs complained of the harassment to human resources in accordance with Defendant LaSalle's policy and procedures. Defendant LaSalle knew or should have known about the harassment and failed to take prompt remedial action.

71.     Defendant LaSalle failed to exercise reasonable care to prevent the aforementioned and described racial harassment and racially hostile work environment from occurring. Defendant LaSalle further failed to exercise reasonable care to correct promptly the aforementioned and described racially harassing behavior.

72.     By the aforesaid acts and omissions of Defendant LaSalle, Plaintiff Kim Williams has been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings and future earning capacity, attorneys' fees, costs of suit and other pecuniary losses not presently ascertained.

73.     As a further direct and legal result of the acts and conduct of Defendant LaSalle, Plaintiff Kim Williams has been caused to and did suffer and continue to suffer severe anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety. Plaintiff Kim Williams does not know at this time the exact duration or permanence of said injuries, but is informed and believes and thereon alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

74.     Plaintiff Kim Williams is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. § 2000e-5(k).

75.     Such discrimination and harassment by Defendant LaSalle against Plaintiff Kim Williams was intentional. Accordingly, Plaintiff Kim Williams is entitled to recover damages from Defendant LaSalle for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other nonpecuniary losses. Further, this

discrimination and harassment was done by Defendant LaSalle with malice or with reckless indifference to Plaintiff Kim Williams' federally protected rights. Plaintiff Kim Williams is therefore also entitled to, and seek recovery of, punitive damages.

76.     Plaintiffs request relief as described in the Prayer for Relief below.

## B.     Count Two: Retaliation Under Title VII
## (Defendant LaSalle Corrections West, LLC)

77.     Plaintiffs repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

78.     Plaintiff Kim Williams has satisfied all jurisdictional prerequisites in connection with this claim under Title VII.

79.     Plaintiff Kim Williams engaged in protected activity by, among other things, complaining about the harassment and discrimination based on race to LaSalle's managers and supervisors, including Defendant Johnson, and filing charges with the EEOC.

80.     Plaintiff Kim Williams reasonably believed the situation involving Defendant LaSalle's employee managers and supervisors constituted unlawful discrimination on the basis of race and a hostile environment.

81.     As a result of Plaintiff Kim Williams' reporting of the discriminatory and harassing misconduct, Plaintiff Kim Williams suffered adverse action. In particular, as a result of her protected activity, Plaintiff Kim Williams was further targeted for harassment and retaliation, including disciplinary warnings.

82.     Defendant LaSalle, through the illegal actions of its employee managers and supervisors, retaliated against Plaintiff Kim Williams by materially altering the terms and conditions of her employment.

83.     There was a causal connection between Plaintiff Kim Williams' participation in the protected activities described above and the adverse employment actions Defendant LaSalle taken against Plaintiff Kim Williams. But for the fact that the Plaintiff Kim Williams engaged in these protected activities, Plaintiff Kim Williams would not have suffered the adverse employment actions.

84.     The employment practices complained of above were intentional.

85.     As a result of Defendant LaSalle's retaliatory conduct, Plaintiff Kim Williams has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with his employment. Plaintiff Kim Williams has also suffered compensatory damages which were a natural, probable and foreseeable result of Defendant LaSalle's actions.

86.     As a further result of Defendant LaSalle's retaliatory conduct, Plaintiff Kim Williams has suffered nonpecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff Kim Williams seeks compensatory damages under Title VII.

87.     Plaintiff Kim Williams has been generally damaged in an amount within the jurisdictional limits of this Court.

88.     Plaintiff Kim Williams alleges that Defendant LaSalle, by engaging in the aforementioned acts and by ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard of Plaintiff Kim Williams' rights, welfare, and safety, thereby justifying an award of punitive and exemplary damages in an amount to be determined at trial.

89.     As a result of Defendant LaSalle's acts and omissions as alleged herein, Plaintiff Kim Williams is entitled to reasonable attorneys' fees and costs of suit, including reasonable expert fees, as provided in Title VII of the Civil Rights of 1964, as amended.

90.     Plaintiff Kim Williams also requests relief as described in the Prayer for Relief below.

**C.     Count Three: Hostile Work Environment Harassment (Race) under Section 1981 (All Defendants)**

91.     Plaintiffs repeat and reallege, as if fully set forth herein, the allegations of the preceding paragraphs.

92.     Defendants subjected Plaintiffs to a hostile work environment in violation of 42 U.S.C. §1981. Plaintiffs have been forced by Defendants to work in a hostile environment on account of their race.

93.     All Defendants, by and through both the acts and omissions of the Individual Defendants, violated Section 1981 by harassing Plaintiffs and creating a hostile work environment as a direct result of Plaintiffs' race.

94.     The race-based harassment was both subjectively and objectively hostile.

95.     Defendants maliciously and recklessly violated its own established rules and procedures to inflict pain and suffering upon the Plaintiffs.

96.     Plaintiffs would not have been subjected to the harassment but for their race, as evidenced by the type of remarks and conduct directed towards them.

97.     The harassment inflicted on Plaintiffs was severe and pervasive and altered the terms and conditions of their employment and created a hostile and abusive work environment.

98.     Defendants failed to exercise reasonable care to prevent the aforementioned behavior and described sexual harassment and sexually hostile work environment from occurring.

Defendants further failed to exercise reasonable care to correct promptly the aforementioned and described sexually harassing behavior.

99.    By the aforesaid acts and omissions of Defendants, Plaintiffs have been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings and future earning capacity, attorneys' fees, costs of suit and other pecuniary losses not presently ascertained.

100.    As a further direct and legal result of the acts and conduct of Defendants, Plaintiffs have been caused to and did suffer and continues to suffer severe anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety. Plaintiffs do not know at this time the exact duration or permanence of said injuries, but is informed and believes, and thereon alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

101.    Plaintiffs have been generally damaged in an amount within the jurisdictional limits of this Court.

102.    Plaintiffs allege that the Defendants, through omissions and by actually engaging in the aforementioned acts and/or in ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard of the rights, welfare and safety of Plaintiffs, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

103.    As a result of Defendants' conduct as alleged herein, Plaintiffs are entitled to reasonable attorneys' fees and costs of suit as allowed by law.

104.    Plaintiffs also request relief as described in the Prayer for Relief below.

### D.    Count Four: Retaliation Under Section 1981
### (Defendant LaSalle Corrections West, LLC)

105.     Plaintiffs repeat and reallege, as if fully set forth herein, the allegations of the preceding paragraphs.

106.     Plaintiffs engaged in protected activity by, among other things, complaining about the racial harassment of Defendant's employee managers and supervisors and participating in the investigation process for that complaint.

107.     Plaintiffs reasonably believed the situation involving Defendant LaSalle's employee managers and supervisors constituted unlawful discrimination and harassment on the basis of race and a racially hostile work environment.

108.     Plaintiffs suffered adverse employment action. In particular, and in retaliation for their above-described protected activity, Plaintiffs were further targeted for harassment and retaliation, including disciplinary warnings. Moreover, Plaintiff Antonio Brown was terminated and/or constructively discharged from his employment with Defendant.

109.     The employment practices complained of above were intentional.

110.     Defendants' actions constitute unlawful retaliation under Section 1981. Specifically, Plaintiffs previously opposed racially discriminatory practices and submitted complaints and/or participated in official investigations and proceedings regarding that complaint of racial harassment. But for Plaintiffs' participation in these protected activities, they would not have suffered the adverse employment action/disparate treatment in the terms and conditions of their employment with Defendant.

111.     Plaintiffs allege that there was a causal connection between the participation in the protected activities described above and the adverse employment decisions made against Plaintiffs. But for the fact that the Plaintiffs engaged in these protected activities, they would not have suffered the adverse employment actions.

112.     As a result of Defendant's retaliatory conduct, Plaintiffs have suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with his employment. Plaintiffs have also suffered compensatory damages which were a natural, probable and foreseeable result of Defendant's actions.

113.     As a further result of Defendant's retaliatory conduct, Plaintiffs have suffered nonpecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Because of these losses, Plaintiffs seek compensatory damages under Section 1981.

114.     Defendant's actions were done with malice and/or with reckless indifference to Plaintiffs' protected rights. Plaintiffs are thereby entitled to punitive damages under Section 1981.

115.     Plaintiffs also seeks reasonable attorneys' fees and court costs, including reasonable expert fees, as allowable by law.

### E.  Count Five: Intentional Infliction of Emotional Distress
### (Defendants Johnson, Hernandez, and Castro)

116.     Plaintiff repeat and reallege, as if fully set forth herein, the allegations of the preceding paragraphs.

117.     Defendants Johnson, Hernandez, and Castro intentionally and/or or recklessly subjected Plaintiffs to racial slurs and other humiliations or intentionally or reckless condoned or otherwise permitted under their management and supervision Plaintiffs to be subjected to racial slurs and other humiliations.

118.     Defendant's conduct was extreme and outrageous and proximately caused Plaintiffs severe emotional and mental distress.

119.     Plaintiffs have suffered and will continue to suffered severe emotional distress and mental damages for which they herein sue for recovery.

**DAMAGES**

120.     Plaintiffs seek actual, compensatory, and punitive damages.

121.     Defendants' actions were done with malice and/or with reckless indifference to Plaintiffs' protected rights. As a result of Defendants' intentional discrimination and other unlawful acts described above, Plaintiffs have suffered and will continue to suffer actual and compensatory damages, including but not limited to lost earnings, expenses for reasonable psychological and medical care (past and future), mental anguish, humiliation, and emotional distress.

122.     The conduct, statements, acts and/or omissions described hereinabove were committed knowingly, in that Defendants had actual awareness of the unfairness of such acts, practices, and/or omission.

123.     As a result of such acts, practices, and/or omissions, Plaintiffs sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish for which Plaintiffs seek to recover in an amount in excess of the minimum jurisdictional limits of this Court.

124.     The acts and omissions of Defednants complained of hereinabove were committed knowingly, willfully, intentionally, with actual awareness, and with specific intent. In order to punish Defendants for such unconscionable acts or omissions and to further deter such acts or omissions in the future, Plaintiffs also seek recovery for exemplary/punitive damages as authorized by law.

**JURY DEMAND**

125.     Plaintiff demands a trial by jury as to all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Andrell Brown, Antonio Brown, and Kim Latrice Williams respectfully request that on final trial, judgment be granted against Defendants LaSalle Corrections West, LLC d/b/a Prairieland Detention Center, Jimmy Johnson, Leandro Hernandez, and Armando Castro, awarding Plaintiffs the following:

a.    Back pay, including but not limited to, lost wages and other employment benefits;

b.    Front pay and benefits;

c.    Actual damages;

d.    Compensatory and/or punitive damages, in the maximum amount allowed by law;

e.    Prejudgment and post-judgment interest, in the maximum amount allowed by law;

f.    Attorneys' fees, expert fees, and costs of suit; and

g.    Such other and further legal and equitable relief to which Plaintiff may be justly entitled.

Respectfully submitted November 3, 2023.

_____
Kevin M. Duddlesten
Texas Bar No. 00793644
DUDDLESTEN LAW GROUP, PLLC
4347 W Northwest Hwy Ste 130, PMB 325
Dallas, TX 75220
Phone: (214) 833-5228
Facsimile: (469) 457-6785
Email: kevin@duddlestenlawgroup.com

ATTORNEYS FOR THE PLAINTIFF

23