**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ANDRELL BROWN, ANTONIO** | ) | |
| **BROWN, and KIM LATRICE** | ) | |
| **WILLIAMS** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CASE NO. 4:23-CV-1115** |
| | ) | |
| **LASALLE CORRECTIONS** | ) | |
| **WEST, LLC d/B/A PRAIRIELAND** | ) | |
| **DETENTION CENTER; JIMMY** | ) | |
| **JOHNSON; LEANDRO HERNANDEZ;** | ) | |
| **and ARMANDO CASTRO** | ) | |
| | ) | |
| **Defendants.** | ) | |

## SECOND AMENDED COMPLAINT

Plaintiffs Andrell Brown, Antonio Brown, and Kim Williams file this their First Amended Complaint seeking damages from (1) LaSalle Corrections West, LLC d/b/a Prairieland Detention Center, (2) Jimmy Johnson, (3) Leandro Hernandez, and (4) Armando Castro, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and Section 1981 of the Civil Rights Acts of 1866, 42 U.S.C. §1981 ("Section 1981"). For these causes of action, Plaintiffs state as follows:

### PARTIES

1.    Plaintiff Andrell Brown is a Black female who resides in Fort Worth (Tarrant County), Texas and, at all material times, worked out of Defendant LaSalle's correctional facility in Alvarado, Texas.

2.      Plaintiff Antonio Brown is a Black male who resides in Fort Worth (Tarrant County), Texas and, at all material times, worked out of Defendant LaSalle's correctional facility in Alvarado, Texas.

3.      Plaintiff Kim Latrice Williams ("Williams") is a Black female who resides in Arlington (Tarrant County), Texas and, at all material times, worked out of Defendant LaSalle's correctional facility/detention center located in Alvarado, Texas.

4.      Defendant LaSalle Corrections West, LLC d/b/a Prairieland Detention Center ("LaSalle" or "Defendant") is a domestic limited liability company organized under the laws of the State of Texas, with its principal place of business located in Ruston, Louisiana.  LaSalle has been served with process.

5.      Defendant Jimmy Johnson ("Johnson") is a White male who, at all material times, served as the warden of LaSalle Corrections West, LLC d/b/a Prairieland Detention Center and who, on information and belief, resides in Covington, Texas. Defendant Johnson has been served with process.

6.      Defendant Leandro Hernandez ("Hernandez") is a Hispanic male who, at all material times, served as the assistant warden of LaSalle Corrections West, LLC d/b/a Prairieland Detention Center and who, on information and belief, resides in Alvarado, Texas. Defendant Hernandez has been served with process.

7.      Defendant Armando Castro ("Castro") is a Hispanic male who, at all material times, served as a chief/supervisor at LaSalle Corrections West, LLC d/b/a Prairieland Detention Center and who, on information and belief, resides in Hillsboro, Texas. Defendant Castro has been served with process.

## JURISDICTION AND VENUE

8.      Plaintiffs seek relief for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and Section 1981 of the Civil Rights Acts of 1866, 42 U.S.C. §1981. Accordingly, this Court has jurisdiction under 28 U.S.C. § 1331.

9.      At all times material hereto, Defendant LaSalle Corrections, LLC conducted business in Texas and was doing business in the State of Texas by employing Plaintiffs in Alvarado, Texas. The causes of action asserted herein arose from and are connected to purposeful acts committed by Defendants during Plaintiff's employment in Alvarado, Texas.

10.     A substantial portion of the acts and omissions giving rise to Plaintiff's claims occurred in Johnson County, Texas and all three Plaintiffs reside in Tarrant County, Texas. Venue is proper in this district and division under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES AND REMEDIES

11.     Plaintiffs timely filed with Equal Employment Opportunity Commission ("EEOC") charges of discrimination and retaliation against Defendant LaSalle.

12.     Plaintiff Andrell Brown her notice of right to sue from the EEOC on February 29, 2024 and timely filed this First Amended Complaint within those 90 days of receiving that notice of right to sue. A true and correct copy of Plaintiff Andrell Brown's right-to-sue letter is attached hereto as **Exhibit A**.

13.     Plaintiff  Antonio Brown received his notices of right to sue on his discrimination charge and his retaliatory termination charge from the EEOC on February 29, 2024 and March 1, 2024 (respectively) and timely filed this First Amended Complaint within those 90 days of receiving those notices of right to sue. True and correct copies of Plaintiff  Antonio Brown's right-to-sue letters are attached hereto as **Exhibit B** and **Exhibit C**.

3

14.    Plaintiff Kim Williams received her notice of right to sue from the EEOC on August 9, 2023 and timely filed the original Complaint within those 90 days of receiving that notice of right to sue. A true and correct copy of Plaintiff Kim Williams' right-to-sue letter is attached hereto as **Exhibit D**.

## FACTUAL BACKGROUND

*General Background*

15.    Defendant LaSalle is a developer and operator of correctional facilities throughout Louisiana, Texas and Georgia. According to its website, LaSalle claims to manage 18 facilities with a total inmate capacity of 13,000 throughout those states.

16.    Defendant LaSalle also claims to provide equal employment opportunities without regard to race, color, national origin, or ancestry (among other things) and purports to prohibit "any form of unlawful employee harassment or discrimination based on these characteristics. (See: https://lasallecorrections.com/workplace/).

17.    Defendant Lasalle  is an "employer" as that term is defined in 42 U.S.C. § 2000e(b) and Texas Labor Code § 21.002(8).

*Andrell Brown*

18.    Plaintiff Andrell Brown was employed as a Detention Officer with LaSalle from January 2020 through May 2023, at which time she was constructively discharged for having previously complained of racial harassment.

19.    In September 2021, when Plaintiff Andrell Brown was eligible for a move to a different and more desirable shift, Defendants Johnson, Castro, and Hernandez attempted to prevent her shift change and required her to seek that shift change through union efforts and challenges. However, when Caucasian and Hispanic employees had requested shift changes for

which they were eligible, Defendant Johnson had approved those requests without requiring an official union action.

20.    After successfully obtaining her change to the new shift (Shift 1B) though union action, Plaintiff Andrell Bown noticed that Black Detention Officers were typically being assigned to more aggressive and difficult security stations, while Caucasian and Hispanic security offers were typically being assigned the more desirable, less-difficult stations.

21.    It was during this time that Plaintiff Andrell Brown began hearing racial slurs and other derogatory language regarding Black employees being used in the workplace.

22.    In June 2022, several Detention Officers heard Defendant Castro remark to one of the training managers in a training class that he (Castro) did not want "the guy with dreads" assigned to his shift because "he has enough of them kind already on my shift."

23.    In September 2022, Plaintiff Andrell Brown and others became aware of social media posts made by Defendant Castro that contained racially derogatory comments directed toward Blacks. One of them stated: "Not our Queen, not our circus. We have our own monkey and circus, thank you." This is but one example of his racial animus towards Black employees.

24.    Also in September 2022, Defendant Castro berated Plaintiff Andrell Brown and a small group of Black Detention Officers, threatening them with their jobs and telling them that they should "go work for McDonald's." Plaintiff Andrell Brown, along with her co-workers, complained to Defendants' Johnson and Hernandez regarding Castro's conduct /behavior, however, no investigation was ever conducted nor was any remedial action ever taken.

25.    In May 2023, after filing her Charge of Discrimination with the EEOC alleging race harassment and discrimination, Plaintiff Andrell Brown learned of derogatory remarks still

5

being made about her by Defendant Castro in a main control briefing. She learned of these remarks directly from the attendees at that briefing.

26.    Plaintiff Andrell Brown suffered—and continues to suffer—severe anxiety and stress over her treatment, and the treatment of other Black Detention Officers as a result of the conduct and/or omissions of Defendants Castro, Johnson, and Hernandez. To further compound the situation, Plaintiff Andrell Brown was never notified of any results or conclusions from any Human Resources investigation, leading her to believe that no such investigations were ever conducted.

27.    The entirety of the comments and conduct directed toward Plaintiff Andrell Brown (as well as the other Black Detention Officers on staff) were wholly inappropriate and entirely unwelcome, and did nothing but create a hostile and untenable work environment which neither Plaintiff Andrell Brown nor any reasonable individual could be expected or required to endure.

28.    After trying in vain to cope with the racial harassment at work and LaSalle's abysmal failure or refusal to remedy that situation, Plaintiff Andrell Brown concluded that the situation would never improve. Plaintiff Andrell Brown decided that she could no longer continue working there to the detriment of her mental and physical well-being. The stress and anxiety had become too much to bear, and she submitted her resignation letter to LaSalle in March 2023, having been constructively discharged.

*Antonio Brown*

29.    Plaintiff Antonio Brown was employed as a Detention Officer with LaSalle from January 2018 through September 2023, at which point he was terminated/constructively discharged.

30.    Beginning in August 2019, Plaintiff Antonio Brown was subjected to racial slurs and derogatory language directed toward Black employees. For example, in August 2019, Defendant Castro referred to Plaintiff Antonio Brown and some of his Black co-workers as "a bunch a monkeys living in the jungle. The following month (September 2019), we were referred to by Defendant Castro as "rats and termites."

31.    A complaint regarding Defendant Castro's actions and comments was made to Defendant Hernandez, who advised that the complaint must be made in writing. That complaint was submitted in writing to the human resources manager (Tonya King). However, no investigation was ever conducted and no remedial action was ever taken.

32.    Repeatedly, Black employees were treated disparately than Caucasian or Hispanic counterparts. For example, a Black Detention Officer was terminated after purportedly "falling asleep on the job" while a white officer who had been caught sleeping on shift over 20 times was not. Coincidentally (or not), the Black officer who was terminated was also the same Black officer that had submitted a written complaint regarding Defendant Castro's racial slurs.  In addition, Caucasian and Hispanic officers were typically assigned to more desirable, less-difficult security stations within the facility.

33.    In April 2023, Defendant Antonio Brown filed his Charge of Discrimination against LaSalle with the EEOC/Texas Workforce Commission, alleging discrimination and harassment on the basis of race, religion, disability, and retaliation.

34.    On July 27, 2023—approximately 3 months after filing his Charge of Discrimination against LaSalle—Plaintiff Antonio Brown was allowed by Defendant Johnson to convert to part-time status at LaSalle. The request for part-time status was an attempt by Defendant

Antonio Brown to lessen the severity of the harassment and discrimination and the impact on his mental and physical well-being.

35.    Defendant Johnson informed Plaintiff Antonio Brown that it would be necessary for him to submit a full-time employee letter of resignation, which he did on July 27, 2023. The effective date of that full-time employment resignation was August 11, 2023, after which Plaintiff Antonio Brown would continue working as a part-time employee at LaSalle. That letter was submitted to Defendants Johnson and Hernandez, as well as a human resources manager (Tonya King).

36.    On August 21, 2023 (10 days after the effective date of the part-time status), Defendant Johnson sent Plaintiff Antonio Brown a letter indicating that he had "reconsidered" Plaintiff's part-time status and that he was no longer being permitted to work part-time. Plaintiff Antonio Brown filed a grievance at LaSalle regarding that recission of the part-time position and was letter notified (by letter dated September 11, 2023, from Assistant Regional Warden Robert Parker) that Defendant Johnson's rescission of the part-time status was being upheld and that the effective date of my termination was being retroactively designated as August 13, 2023.

37.    Plaintiff Antonio Brown was told that the rescission of his part-time employment status was due to the lack of part-time staffing in the staffing plan at Prairieland Detention Center. However, Plaintiff Antonio Brown is aware of other officers at the detention center working part-time, including Officer Van Ryan (a Caucasian male) and another Caucasian male who happens to be the son of Tonya King (the HR manager).

38.    The stated reason for his termination is a pretext for retaliation by Defendants in response to Plaintiff's Antonio Brown's prior complaints of harassment and his April 2023 Charge of Discrimination.

39.     Plaintiff Antonio Brown suffered—and continues to suffer—severe anxiety and stress over her treatment, and the treatment of other Black Detention Officers as a result of the conduct and/or omissions of Defendants Castro, Johnson, and Hernandez. To further compound the situation, Plaintiff Antonio Brown was never notified of any results or conclusions from any Human Resources investigation, leading him to believe that no such investigations were ever conducted.

***Kim Williams***

40.     Plaintiff Kim Williams has been employed as a Detention Officer with LaSalle since October 2018, during which time she has served as a union representative for non-management Detention Officers who are members of a collective bargaining unit at LaSalle.

41.     In the course of her duties, Plaintiff Williams has been called upon numerous times to intervene with management on behalf of Black co-workers and collective bargaining unit members who have received unfair treatment on the basis of their race.

42.     For example, in August 2021, Plaintiff Williams was asked to speak to management regarding the unfair treatment of a Black female Detention Officer by Defendant Castro. Plaintiff Williams reported conduct of Defendant Castro to Defendant Johnosn, who indicated that he would speak to Defendant Castro. Defendant Castro later approached Plaintiff Williams and demanded to know what she (Plaintiff Williams) had told the warden. He made it clear to Plaintiff Williams that her daily duties were going to be questioned and scrutinized going forward.

43.     On August 30, 2021, following that encounter, Defendants Castro and Hernandez, unnecessarily and without provocation, harassed Plaintiff Williams over her daily work routine. On September 9, 2021, Plaintiff Williams grieved the denial of a Black Detention Officers' request

to move to the day shift, based on the fact that such requests by White Detention Officers were routinely approved. That grievance was upheld and the Black officer was moved to his requested shift. Yet it incited further retaliatory conduct by Defendants.

44.    Plaintiff Williams' husband, who is also employed at LaSalle, began received targeted unfair treatment by Defendants.  For example, on September 13, 2021, Defendant Castro began unnecessarily harassing Plaintiff Williams's husband regarding his uniform and commented that he would like the husband "to wash his [Castro's] car because he's doing such a good job washing the company vans."

45.    On October 27, 2021, Plaintiff Williams intervened as union steward with Defendant Johnson regarding a situation where a Black officer was bypassed for a requested shift change in favor of a White officer. After establishing with evidence that the Black officer had requested the shift change prior to the White officer and questioning the denial of a Black officer's request, Defendant Johnson became angry and made it clear to Plaintiff Williams that he was upset with her for having challenged him on the issue of race preference in the shift request. And the retaliation continued.

46.    On November 2, 2021, Plaintiff Williams grieved the sudden termination of a Black officer, ostensibly for abusing the time and attendance policy. Plaintiff Willams established that the Black officer had been treated differently than White and Hispanic employees under similar circumstances, and also established that the time and attendance cards of the White and Hispanic LaSalle supervisors reflected the same violations for which the Black officer had been terminated. Based on that showing, Defendant Johnson had no choice but to suspend the time and attendance policy and reinstate the Black officer, with back pay. Yet the retaliation continued.

47.    The following day—November 3, 2021—Plaintiff Willaims was issued a written disciplinary warning for "leaving her post without proper relief," based solely on the fact that Plaintiff Williams had left her workstation to take her restroom break without obtaining a relief officer to replace her in the workstation. After Plaintiff Williams pointed out that no other shifts were required to obtain replacement officers in order to take restroom breaks. She was advised that that the rule with regard to her and her shift co-worker at her workstation. Plaintiff Willaims grieved the warning to Defendant Johnson, who summarily denied the grievance, stating that he did not "believe" that anyone had harassed or retaliated against her. On November 23, 2021, unable to locate a relief officer when she needed a restroom break, Plaintiff Willaims soiled herself in order to avoid violating a policy that was only applied to her in retaliation for having previously reported disparate treatment of Black employees.

48.    After her accident in November 23, 2021, Plaintiff Williams because the subject of public ridicule at the facility and Defendant Johnson told Plaintiff Willaim's Supervisor (Sgt. Uddin) that Defendants Hernandez and Castro took it to far and had gone "rogue" on him. An email was sent to Defendant Johnson from the union stating that if the retaliation against Plaintiff Williams continued, complaints would be filed with the appropriate government agencies to address the retaliation. Defendant Johnson stated that he would make sure that the retaliation was addressed. It most certainly was not.

49.    On December 15, 2021, Plaintiff Willaims reported to work and learned that her position had new post orders to reflect that she (Plaintiff Willaims) now had to be relieved to use the bathroom or leave her post.

50.    On February 11, 2022, Plaintiff Willaims reported by email to Defendant Johnson and LaSalle's human resources manager that she was the target of race harassment by one of her

co-workers. Although Defendant Johnson stated that he would "send it to his supervisor" to determine how to handle the situation and that the co-worker would be terminated, this never happened. Instead, the harassing officer was simply moved to another shift and Plaintiff Williams was still required to interact with the harassing officer when she took overtime assignments on the other shift.

51.    On April 18, 2022, Plaintiff Williams filed her charge of Discrimination with the EEOC, alleging race harassment/discrimination and retaliation for the events described hereinabove. The charge was filed as a continuing action charge, as the discrimination/harassment and retaliation was on-going.

52.    On May 2, 2022, Plaintiff Williams sent an email concerning racial discrimination against three Black officers. Defendant Castro again retaliated, complaining (without foundation) later that month regarding Plaintiff Williams' performance.

53.    On June 23, 2022, Plaintiff Willaims reported racist comments made by Defendant Castro during a training session and pointed out that Castro had also commented that "it is always the Black officers complaining about everything." Nothing was done.

54.    After Plaintiff Williams reporting the racial discrimination and harassment and filed her Charge, the situation did not improve. In fact, the harassment worsened and she was targeted for retaliation. For example, in December 2022, Plaintiff Williams spoke with Defendant Johnson about the on-going harassment and Defendant Johnson stated that he would look into it and address it. Following that meeting, Plaintiff Williams was written up by Defendant Hernandez for, in part, being "disrespectful" to Defendant Johnson. Plaintiff Williams was given a one-day suspension and placed on 6-months' probation.

55. On January 17, 2023, Plaintiff Williams was asked for her keys and badge and escorted out of the facility and placed on administrative leave with pay until further notice. She was told that she had several instances of poor job performance. The process was purely for retaliatory embarrassment and humiliation, as Plaintiff Williams was the only officer that was asked to return a badge and keys and escorted out when placed on an administrative leave.

56. Two days later, on January 19, 2023, Plaintiff Williams was called back to the facility and issued three disciplinary warnings, all premised on false statements. She was suspended for one day without pay and placed on probation for six months. Plaintiff Willaims filed an appeal of the warnings and was advised that she would be notified of the decision. As of this filing, no decision or explanation has been provided to her. This discipline was a pretext for further harassment and retaliation in response to Plaintiff Williams prior complaint and Charge.

57. The entirety of the comments and conduct directed toward Plaintiff Williams (as well as the other Black Detention Officers on staff) were wholly inappropriate and entirely unwelcome, and did nothing but create a hostile and untenable work environment.  Plaintiff Williams has suffered—and continues to suffer—severe anxiety and stress over her treatment, and the treatment of other Black Detention Officers as a result of the conduct and/or omissions of Defendants Castro, Johnson, and Hernandez

58. On September 5, 2023, Defendant Johnson was either fired or resigned—he no longer works for LaSalle as of that date. Two weeks following his departure, Plaintiff Williams received a call from Defendant Johnson apologizing for the things that happened between him and Plaintiff Williams.

59.     Since the filing of her original Charge in 2023 and the instant lawsuit, Plaintiff Williams has been and continues to be subjected to retaliatory treatment by Defendant LaSalle and its managers, including Defendants Castro and Hernandez.

60.     For example, since the filing of her prior Charge and this lawsuit, Plaintiff Williams has submitted additional internal complaints of discrimination and harassment. Rather than properly investigating those complaints and taking appropriate remedial action, Defendant LaSalle's managers/supervisors—including Defendant Castro and Defendant Hernandez—have failed or refused to investigate those complaints and/or take appropriate remedial action, allowing the harassment and discrimination to continue.  These acts and/or omissions by Defendant. Castro and Defendant Hernandez are intentional and deliberate retaliation.

61.     Also by way of example, on or about November 4, 2024, Plaintiff Williams was issued a false written disciplinary action by Defendant Castro, in retaliation for her having filed her initial Charge and this lawsuit. According to the written disciplinary action, Defendant Castro alleged that Plaintiff Williams witnessed a security officer remove a firearm from the holster of another officer and point the firearm at the officer and, further, that Plaintiff Williams failed to make any effort to prevent it.

62.     At the time of the incident described by Defendant Castro in his written disciplinary action, Plaintiff Williams was actually facing away from the two officers and neither observed nor was even aware of the incident until the following day. Defendant Castro, however, issued a written disciplinary action as unlawful retaliation.

63.     Defendant Hernandez conducted an investigation into the incident and, following that investigation, falsely reported that Ms. Williams had seen and was fully aware of what had occurred (and failed to take any action). However, Plaintiff Willams subsequently viewed the

14

security video footage of the incident and that footage depicted Plaintiff looking in another direction when the incident occurred. Despite clear evidence that Plaintiff had not witnessed the incident, Hernandez falsely claimed in his report that Ms. Williams had observed the incident and took no action.

64.    Moreover, there were other security officers present in the area at the time who received no disciplinary action, despite the fact that they were in the same proximity. According to the video footage viewed by Plaintiff Williams, she (Plaintiff Willams) was standing next to another officer who was looking in the same direction that she was. However, Plaintiff Williams was the only officer who was disciplined for failing to take any action (despite not having witnessed the actual incident). Contrary to that direct evidence, Defendant Hernandez falsely concluded that Plaintiff Williams had violated workplace policies and procedure in order to justify and validate the written disciplinary action issued by his co-defendant intis matter (Defendant Castra) to Plaintiff Williams.

65.    These actions of Defendant Castro and Defendant Hernandez were retaliation against Ms. Williams for her prior Charge and this lawsuit.

66.    In December 2024, Plaintiff Willams timely filed a Charge of Discrimination, alleging retaliation for engaging in protected activity under Title VII in connection with retaliation that she has experienced subsequent to the filing of this lawsuit, including the disciplinary actions taken against her. The EEOC issued a Notice of Right to Sue on that charge on or about March 31, 2025, authorizing Plaintiff Williams to pursue this claim in this matter.

## CAUSES OF ACTION

**A.    Count One: Hostile Work Environment Harassment (Race) under Title VII
(Defendant LaSalle Corrections West, LLC)**

15

67.     Plaintiffs repeat and reallege, as if fully set forth herein, the allegations of the preceding paragraphs.

68.     Plaintiffs allege that Defendant LaSalle, as their employer, subjected them to a racially hostile work environment in violation of § 42 U.S.C. § 2000e-2 *et seq*.

69.     Plaintiffs are members of a protected class (Race: Black). Plaintiffs were subjected to unwelcome and hostile verbal conduct of a racial nature which has continued throughout their employment. 42 U.S.C. § 2000e(f).

70.     Defendant LaSalle is an employer within the meaning of Title VII. 42 U.S.C. § 2000e(b).

71.     All conditions precedent to filing this action for discrimination under federal law have been met.

72.     Defendant LaSalle, by and through the actions of its employee managers and supervisors, violated Title VII, as amended, by harassing Plaintiffs and/or creating a racially hostile work environment, and/or discriminating and/or retaliating against Plaintiffs in connection with compensation, terms, conditions or privileges of employment because of their race.

73.     Defendant LaSalle, by and through the actions of its employee managers and supervisors, maliciously and recklessly violated its own established rules and procedures to inflict pain and suffering upon Plaintiffs.

74.     Defendant LaSalle allowed a racially hostile work environment that targeted Black employees to persist.

75.     Plaintiffs complained about the racially-charged misconduct in accordance with Defendant LaSalle's policies and procedure but their complaints were ignored and Defendant LaSalle failed or refused to investigate. Defendant LaSalle failed to exercise reasonable care to

prevent the aforementioned described racial harassment and hostile work environment from occurring.

76.    Plaintiffs would not have been subjected to the harassment but for their race, as evidenced by the type of remarks and conduct directed towards them.

77.    The harassment inflicted on Plaintiffs was severe and pervasive and altered the terms and conditions of their employment and created a hostile and abusive work environment.

78.    Plaintiffs complained of the harassment to human resources in accordance with Defendant LaSalle's policy and procedures. Defendant LaSalle knew or should have known about the harassment and failed to take prompt remedial action.

79.    Defendant LaSalle failed to exercise reasonable care to prevent the aforementioned and described racial harassment and racially hostile work environment from occurring. Defendant LaSalle further failed to exercise reasonable care to correct promptly the aforementioned and described racially harassing behavior.

80.    By the aforesaid acts and omissions of Defendant LaSalle, Plaintiffs have been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings and future earning capacity, attorneys' fees, costs of suit and other pecuniary losses not presently ascertained.

81.    As a further direct and legal result of the acts and conduct of Defendant LaSalle, Plaintiffs have been caused to and did suffer and continue to suffer severe anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety. Plaintiffs do not know at this time the exact duration or permanence of said injuries, but are informed and believe and thereon allege, that some if not all of the injuries are reasonably certain to be permanent in character.

82.     Plaintiffs are entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. § 2000e-5(k).

83.     Such discrimination and harassment by Defendant LaSalle against Plaintiffs was intentional. Accordingly, Plaintiffs are entitled to recover damages from Defendant LaSalle for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other nonpecuniary losses.

84.     Further, this discrimination and harassment was done by Defendant LaSalle with malice or with reckless indifference to Plaintiffs' federally protected rights. Plaintiffs are therefore also entitled to, and seek recovery of, punitive damages.

85.     Plaintiffs request relief as described in the Prayer for Relief below.

### B.     Count Two: Retaliation Under Title VII
### (Defendant LaSalle Corrections West, LLC)

86.     Plaintiffs repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

87.     Plaintiffs have satisfied all jurisdictional prerequisites in connection with this claim under Title VII.

88.     Plaintiffs engaged in protected activity by, among other things, complaining about the harassment and discrimination based on race to LaSalle's managers and supervisors, including Defendant Johnson, and filing charges with the EEOC.

89.     Plaintiffs reasonably believed the situation involving Defendant LaSalle's employee managers and supervisors constituted unlawful discrimination on the basis of race and a hostile environment.

90.     As a result of Plaintiffs' reporting of the discriminatory and harassing misconduct and the filing and prosecution of the claims in this lawsuit, Plaintiffs suffered adverse action. In

particular, as a result of their protected activity, Plaintiffs were further targeted for harassment and retaliation, including disciplinary warnings, suspensions, and/or termination.

91.    Defendant LaSalle, through the illegal actions of its employee managers and supervisors, retaliated against Plaintiffs by materially altering the terms and conditions of their employment.

92.    There was a causal connection between Plaintiffs' participation in protected activities and the adverse employment actions Defendant LaSalle taken against Plaintiffs. But for the fact that the Plaintiffs engaged in these protected activities, Plaintiffs would not have suffered the adverse employment actions.

93.    The employment practices complained of above were intentional.

94.    As a result of Defendant LaSalle's retaliatory conduct, Plaintiffs have suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with their employment. Plaintiffs have also suffered compensatory damages which were a natural, probable and foreseeable result of Defendant LaSalle's actions.

95.    As a further result of Defendant LaSalle's retaliatory conduct, Plaintiffs have suffered nonpecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Plaintiffs seek compensatory damages under Title VII.

96.    Plaintiffs have been generally damaged in an amount within the jurisdictional limits of this Court.

97.    Plaintiffs allege that Defendant LaSalle, by engaging in the aforementioned acts and by ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard of Plaintiff' rights, welfare, and safety,

thereby justifying an award of punitive and exemplary damages in an amount to be determined at trial.

98.     As a result of Defendant LaSalle's acts and omissions as alleged herein, Plaintiffs are entitled to reasonable attorneys' fees and costs of suit, including reasonable expert fees, as provided in Title VII of the Civil Rights of 1964, as amended.

99.     Plaintiffs also request relief as described in the Prayer for Relief below.

**C.     Count Three: Hostile Work Environment Harassment (Race) under Section 1981
(All Defendants)**

100.    Plaintiffs repeat and reallege, as if fully set forth herein, the allegations of the preceding paragraphs.

101.    Defendants subjected Plaintiffs to a hostile work environment in violation of 42 U.S.C. §1981. Plaintiffs have been forced by Defendants to work in a hostile environment on account of their race.

102.    All Defendants, by and through both the acts and omissions of the Individual Defendants, violated Section 1981 by harassing Plaintiffs and creating a hostile work environment as a direct result of Plaintiffs' race.

103.    The race-based harassment was both subjectively and objectively hostile.

104.    Defendants maliciously and recklessly violated its own established rules and procedures to inflict pain and suffering upon the Plaintiffs.

105.    Plaintiffs would not have been subjected to the harassment but for their race, as evidenced by the type of remarks and conduct directed towards them.

106.    The harassment inflicted on Plaintiffs was severe and pervasive and altered the terms and conditions of their employment and created a hostile and abusive work environment.

107.     Defendants failed to exercise reasonable care to prevent the aforementioned behavior and described sexual harassment and sexually hostile work environment from occurring. Defendants further failed to exercise reasonable care to correct promptly the aforementioned and described sexually harassing behavior.

108.     By the aforesaid acts and omissions of Defendants, Plaintiffs have been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings and future earning capacity, attorneys' fees, costs of suit and other pecuniary losses not presently ascertained.

109.     As a further direct and legal result of the acts and conduct of Defendants, Plaintiffs have been caused to and did suffer and continues to suffer severe anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety. Plaintiffs do not know at this time the exact duration or permanence of said injuries, but is informed and believes, and thereon alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

110.     Plaintiffs have been generally damaged in an amount within the jurisdictional limits of this Court.

111.     Plaintiffs allege that the Defendants, through omissions and by actually engaging in the aforementioned acts and/or in ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard of the rights, welfare and safety of Plaintiffs, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

112.     As a result of Defendants' conduct as alleged herein, Plaintiffs are entitled to reasonable attorneys' fees and costs of suit as allowed by law.

113.     Plaintiffs also request relief as described in the Prayer for Relief below.

**D.    Count Four: Retaliation Under Section 1981**
**(Defendant LaSalle Corrections West, LLC)**

114.    Plaintiffs repeat and reallege, as if fully set forth herein, the allegations of the preceding paragraphs.

115.    Plaintiffs engaged in protected activity by, among other things, complaining about the racial harassment of Defendant's employee managers and supervisors, participating in the investigation process for that complaint, and filing and prosecuting the claims in this lawsuit.

116.    Plaintiffs reasonably believed the situation involving Defendant LaSalle's employee managers and supervisors constituted unlawful discrimination and harassment on the basis of race and a racially hostile work environment.

117.    Plaintiffs suffered adverse employment action. In particular, and in retaliation for their above-described protected activity, Plaintiffs were further targeted for harassment and retaliation, including disciplinary warnings. Moreover, Plaintiff Antonio Brown was terminated and/or constructively discharged from his employment with Defendant.

118.    The employment practices complained of above were intentional.

119.    Defendants' actions constitute unlawful retaliation under Section 1981. Specifically, Plaintiffs previously opposed racially discriminatory practices and submitted complaints and/or participated in official investigations and proceedings regarding that complaint of racial harassment. But for Plaintiffs' participation in these protected activities, they would not have suffered the adverse employment action/disparate treatment in the terms and conditions of their employment with Defendant.

120.    Plaintiffs allege that there was a causal connection between the participation in the protected activities described above and the adverse employment decisions made against Plaintiffs.

But for the fact that the Plaintiffs engaged in these protected activities, they would not have suffered the adverse employment actions.

121. As a result of Defendant's retaliatory conduct, Plaintiffs have suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with his employment. Plaintiffs have also suffered compensatory damages which were a natural, probable and foreseeable result of Defendant's actions.

122. As a further result of Defendant's retaliatory conduct, Plaintiffs have suffered nonpecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Because of these losses, Plaintiffs seek compensatory damages under Section 1981.

123. Defendant's actions were done with malice and/or with reckless indifference to Plaintiffs' protected rights. Plaintiffs are thereby entitled to punitive damages under Section 1981.

124. Plaintiffs also seeks reasonable attorneys' fees and court costs, including reasonable expert fees, as allowable by law.

## DAMAGES

125. Plaintiffs seek actual, compensatory, and punitive damages.

126. Defendants' actions were done with malice and/or with reckless indifference to Plaintiffs' protected rights. As a result of Defendants' intentional discrimination and other unlawful acts described above, Plaintiffs have suffered and will continue to suffer actual and compensatory damages, including but not limited to lost earnings, expenses for reasonable psychological and medical care (past and future), mental anguish, humiliation, and emotional distress.

23

127. The conduct, statements, acts and/or omissions described hereinabove were committed knowingly, in that Defendants had actual awareness of the unfairness of such acts, practices, and/or omission.

128. As a result of such acts, practices, and/or omissions, Plaintiffs sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish for which Plaintiffs seek to recover in an amount in excess of the minimum jurisdictional limits of this Court.

129. The acts and omissions of Defendants complained of hereinabove were committed knowingly, willfully, intentionally, with actual awareness, and with specific intent. In order to punish Defendants for such unconscionable acts or omissions and to further deter such acts or omissions in the future, Plaintiffs also seek recovery for exemplary/punitive damages as authorized by law.

## JURY DEMAND

130. Plaintiffs have demanded a trial by jury as to all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Andrell Brown, Antonio Brown, and Kim Latrice Williams respectfully request that on final trial, judgment be granted against Defendants LaSalle Corrections West, LLC d/b/a Prairieland Detention Center, Jimmy Johnson, Leandro Hernandez, and Armando Castro, awarding Plaintiffs the following:

a. Back pay, including but not limited to, lost wages and other employment benefits;

b. Front pay and benefits;

c. Actual damages;

d. Compensatory and/or punitive damages, in the maximum amount allowed by law;

e.    Prejudgment and post-judgment interest, in the maximum amount allowed by law;

f.    Attorneys' fees, expert fees, and costs of suit; and

g.    Such other and further legal and equitable relief to which Plaintiff may be justly entitled.

Respectfully submitted April 22, 2025.


/s/ Kevin M. Duddlesten
Texas Bar No. 00793644
DUDDLESTEN LAW GROUP, PLLC
4347 W Northwest Hwy Ste 130, PMB 325
Dallas, TX 75220
Phone: (214) 833-5228
Facsimile: (469) 457-6785
Email: kevin@duddlestenlawgroup.com

**ATTORNEYS FOR PLAINTIFFS**


## <u>CERTIFICATE OF SERVICE</u>

I certify a true and correct copy of the foregoing document was filed electronically on April 22, 2025. Parties may access this filing through the Court's system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.


/s/ Kevin M. Duddlesten
Kevin M. Duddlesten