**FILED**

**August 5, 2025**

KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| KIM LATRICE WILLIAMS | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | **CASE NO. 4:23-CV-01115-P** |
| | ) | |
| LASALLE CORRECTIONS | ) | |
| WEST, LLC d/B/A PRAIRIELAND | ) | |
| DETENTION CENTER; JIMMY | ) | |
| JOHNSON; LEANDRO HERNANDEZ; | ) | |
| and ARMANDO CASTRO | ) | |
| | ) | |
| **Defendants.** | ) | |

## THIRD AMENDED COMPLAINT

Plaintiff Kim Latrice Williams files this her Third Amended Complaint seeking damages from (1) LaSalle Corrections West, LLC d/b/a Prairieland Detention Center, (2) Jimmy Johnson, (3) Leandro Hernandez, and (4) Armando Castro, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and Section 1981 of the Civil Rights Acts of 1866, 42 U.S.C. §1981 ("Section 1981"). For these causes of action, Plaintiff states as follows:

### PARTIES

1.      Plaintiff Kim Latrice Williams is a Black female who resides in Fort Worth (Tarrant County), Texas and, at all material times, worked out of Defendant LaSalle's correctional facility in Alvarado, Texas.

2.      Defendant LaSalle Corrections West, LLC d/b/a Prairieland Detention Center ("LaSalle" or "Defendant") is a domestic limited liability company organized under the laws of the State of Texas, with its principal place of business located in Ruston, Louisiana.  LaSalle has been served with process.

3.      Defendant Jimmy Johnson ("Johnson") is a White male who, at all material times, served as the warden of LaSalle Corrections West, LLC d/b/a Prairieland Detention Center and who, on information and belief, resides in Covington, Texas. Defendant Johnson has been served with process.

4.      Defendant Leandro Hernandez ("Hernandez") is a Hispanic male who, at all material times, served as the assistant warden of LaSalle Corrections West, LLC d/b/a Prairieland Detention Center and who, on information and belief, resides in Alvarado, Texas. Defendant Hernandez has been served with process.

5.      Defendant Armando Castro ("Castro") is a Hispanic male who, at all material times, served as a chief/supervisor at LaSalle Corrections West, LLC d/b/a Prairieland Detention Center and who, on information and belief, resides in Hillsboro, Texas. Defendant Castro has been served with process.

## JURISDICTION AND VENUE

6.      Plaintiff seeks relief for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and Section 1981 of the Civil Rights Acts of 1866, 42 U.S.C. §1981. Accordingly, this Court has jurisdiction under 28 U.S.C. § 1331.

7.      At all times material hereto, Defendant LaSalle Corrections, LLC conducted business in Texas and was doing business in the State of Texas by employing Plaintiff in Alvarado, Texas. The causes of action asserted herein arose from and are connected to purposeful acts committed by Defendants during Plaintiff's employment in Alvarado, Texas.

8.      A substantial portion of the acts and omissions giving rise to Plaintiff's claims occurred in Johnson County, Texas and Plaintiff resides in Tarrant County, Texas. Venue is proper in this district and division under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

**EXHAUSTION OF ADMINISTRATIVE PROCEDURES AND REMEDIES**

9.      Plaintiff timely filed with Equal Employment Opportunity Commission ("EEOC") charges of discrimination and retaliation against Defendant LaSalle.

10.     Plaintiff Kim Williams received her notices of right to sue from the EEOC on August 9, 2023 and March 31, 2025 and timely filed her claims within those 90 days of receiving those notices of right to sue.

**FACTUAL BACKGROUND**

11.     Defendant LaSalle is a developer and operator of correctional facilities throughout Louisiana, Texas and Georgia. According to its website, LaSalle claims to manage 18 facilities with a total inmate capacity of 13,000 throughout those states.

12.     Defendant LaSalle also claims to provide equal employment opportunities without regard to race, color, national origin, or ancestry (among other things) and purports to prohibit "any form of unlawful employee harassment or discrimination based on these characteristics. (See: https://lasallecorrections.com/workplace/).

13.     Defendant Lasalle  is an "employer" as that term is defined in 42 U.S.C. § 2000e(b) and Texas Labor Code § 21.002(8).

14.     Plaintiff Williams has been employed as a Detention Officer with LaSalle since October 2018, during which time she has served as a union representative for non-management Detention Officers who are members of a collective bargaining unit at LaSalle.

15.     In the course of her duties, Plaintiff Williams has been called upon numerous times to intervene with management on behalf of Black co-workers and collective bargaining unit members who have received unfair treatment on the basis of their race.

16.     For example, in August 2021, Plaintiff Williams was asked to speak to management regarding the unfair treatment of a Black female Detention Officer by Defendant

Castro. Plaintiff Williams reported conduct of Defendant Castro to Defendant Johnosn, who indicated that he would speak to Defendant Castro. Defendant Castro later approached Plaintiff Williams and demanded to know what she (Plaintiff Williams) had told the warden. He made it clear to Plaintiff Williams that her daily duties were going to be questioned and scrutinized going forward.

17.     On August 30, 2021, following that encounter, Defendants Castro and Hernandez, unnecessarily and without provocation, harassed Plaintiff Williams over her daily work routine. On September 9, 2021, Plaintiff Williams grieved the denial of a Black Detention Officers' request to move to the day shift, based on the fact that such requests by White Detention Officers were routinely approved. That grievance was upheld and the Black officer was moved to his requested shift. Yet it incited further retaliatory conduct by Defendants.

18.     Plaintiff Williams' husband, who is also employed at LaSalle, began received targeted unfair treatment by Defendants.  For example, on September 13, 2021, Defendant Castro began unnecessarily harassing Plaintiff Williams's husband regarding his uniform and commented that he would like the husband "to wash his [Castro's] car because he's doing such a good job washing the company vans."

19.     On October 27, 2021, Plaintiff Williams intervened as union steward with Defendant Johnson regarding a situation where a Black officer was bypassed for a requested shift change in favor of a White officer. After establishing with evidence that the Black officer had requested the shift change prior to the White officer and questioning the denial of a Black officer's request, Defendant Johnson became angry and made it clear to Plaintiff Williams that he was upset with her for having challenged him on the issue of race preference in the shift request. And the retaliation continued.

20.     On November 2, 2021, Plaintiff Williams grieved the sudden termination of a Black officer, ostensibly for abusing the time and attendance policy. Plaintiff Willams established that the Black officer had been treated differently than White and Hispanic employees under similar circumstances, and also established that the time and attendance cards of the White and Hispanic LaSalle supervisors reflected the same violations for which the Black officer had been terminated. Based on that showing, Defendant Johnson had no choice but to suspend the time and attendance policy and reinstate the Black officer, with back pay. Yet the retaliation continued.

21.     The following day—November 3, 2021—Plaintiff Willaims was issued a written disciplinary warning for "leaving her post without proper relief," based solely on the fact that Plaintiff Williams had left her workstation to take her restroom break without obtaining a relief officer to replace her in the workstation. After Plaintiff Williams pointed out that no other shifts were required to obtain replacement officers in order to take restroom breaks. She was advised that that the rule with regard to her and her shift co-worker at her workstation. Plaintiff Willaims grieved the warning to Defendant Johnson, who summarily denied the grievance, stating that he did not "believe" that anyone had harassed or retaliated against her. On November 23, 2021, unable to locate a relief officer when she needed a restroom break, Plaintiff Willaims soiled herself in order to avoid violating a policy that was only applied to her in retaliation for having previously reported disparate treatment of Black employees.

22.     After her accident in November 23, 2021, Plaintiff Williams because the subject of public ridicule at the facility and Defendant Johnson told Plaintiff Willaim's Supervisor (Sgt. Uddin) that Defendants Hernandez and Castro took it to far and had gone "rogue" on him. An email was sent to Defendant Johnson from the union stating that if the retaliation against Plaintiff Williams continued, complaints would be filed with the appropriate government agencies to

address the retaliation. Defendant Johnson stated that he would make sure that the retaliation was addressed. It most certainly was not.

23.    On December 15, 2021, Plaintiff Willaims reported to work and learned that her position had new post orders to reflect that she (Plaintiff Willaims) now had to be relieved to use the bathroom or leave her post.

24.    On February 11, 2022, Plaintiff Willaims reported by email to Defendant Johnson and LaSalle's human resources manager that she was the target of race harassment by one of her co-workers. Although Defendant Johnson stated that he would "send it to his supervisor" to determine how to handle the situation and that the co-worker would be terminated, this never happened. Instead, the harassing officer was simply moved to another shift and Plaintiff Williams was still required to interact with the harassing officer when she took overtime assignments on the other shift.

25.    On April 18, 2022, Plaintiff Williams filed her charge of Discrimination with the EEOC, alleging race harassment/discrimination and retaliation for the events described hereinabove. The charge was filed as a continuing action charge, as the discrimination/harassment and retaliation was on-going.

26.    On May 2, 2022, Plaintiff Williams sent an email concerning racial discrimination against three Black officers. Defendant Castro again retaliated, complaining (without foundation) later that month regarding Plaintiff Williams' performance.

27.    On June 23, 2022, Plaintiff Willaims reported racist comments made by Defendant Castro during a training session and pointed out that Castro had also commented that "it is always the Black officers complaining about everything." Nothing was done.

28.     After Plaintiff Williams reporting the racial discrimination and harassment and filed her Charge, the situation did not improve. In fact, the harassment worsened and she was targeted for retaliation. For example, in December 2022, Plaintiff Williams spoke with Defendant Johnson about the on-going harassment and Defendant Johnson stated that he would look into it and address it. Following that meeting, Plaintiff Williams was written up by Defendant Hernandez for, in part, being "disrespectful" to Defendant Johnson. Plaintiff Williams was given a one-day suspension and placed on 6-months' probation.

29.     On January 17, 2023, Plaintiff Williams was asked for her keys and badge and escorted out of the facility and placed on administrative leave with pay until further notice. She was told that she had several instances of poor job performance. The process was purely for retaliatory embarrassment and humiliation, as Plaintiff Williams was the only officer that was asked to return a badge and keys and escorted out when placed on an administrative leave.

30.     Two days later, on January 19, 2023, Plaintiff Williams was called back to the facility and issued three disciplinary warnings, all premised on false statements. She was suspended for one day without pay and placed on probation for six months. Plaintiff Willaims filed an appeal of the warnings and was advised that she would be notified of the decision. As of this filing, no decision or explanation has been provided to her. This discipline was a pretext for further harassment and retaliation in response to Plaintiff Williams prior complaint and Charge.

31.     The entirety of the comments and conduct directed toward Plaintiff Williams (as well as the other Black Detention Officers on staff) were wholly inappropriate and entirely unwelcome, and did nothing but create a hostile and untenable work environment.  Plaintiff Williams has suffered—and continues to suffer—severe anxiety and stress over her treatment, and

7

the treatment of other Black Detention Officers as a result of the conduct and/or omissions of Defendants Castro, Johnson, and Hernandez

32.    On September 5, 2023, Defendant Johnson was either fired or resigned—he no longer works for LaSalle as of that date. Two weeks following his departure, Plaintiff Williams received a call from Defendant Johnson apologizing for the things that happened between him and Plaintiff Williams.

33.    Since the filing of her original Charge in 2023 and the instant lawsuit, Plaintiff Williams has been and continues to be subjected to retaliatory treatment by Defendant LaSalle and its managers, including Defendants Castro and Hernandez.

34.    For example, since the filing of her prior Charge and this lawsuit, Plaintiff Williams has submitted additional internal complaints of discrimination and harassment. Rather than properly investigating those complaints and taking appropriate remedial action, Defendant LaSalle's managers/supervisors—including Defendant Castro and Defendant Hernandez—have failed or refused to investigate those complaints and/or take appropriate remedial action, allowing the harassment and discrimination to continue.  These acts and/or omissions by Defendant. Castro and Defendant Hernandez are intentional and deliberate retaliation.

35.    Also by way of example, on or about November 4, 2024, Plaintiff Williams was issued a false written disciplinary action by Defendant Castro, in retaliation for her having filed her initial Charge and this lawsuit. According to the written disciplinary action, Defendant Castro alleged that Plaintiff Williams witnessed a security officer remove a firearm from the holster of another officer and point the firearm at the officer and, further, that Plaintiff Williams failed to make any effort to prevent it.

36.    At the time of the incident described by Defendant Castro in his written disciplinary action, Plaintiff Williams was actually facing away from the two officers and neither observed nor was even aware of the incident until the following day. Defendant Castro, however, issued a written disciplinary action as unlawful retaliation.

37.    Defendant Hernandez conducted an investigation into the incident and, following that investigation, falsely reported that Ms. Williams had seen and was fully aware of what had occurred (and failed to take any action). However, Plaintiff Willams subsequently viewed the security video footage of the incident and that footage depicted Plaintiff looking in another direction when the incident occurred. Despite clear evidence that Plaintiff had not witnessed the incident, Hernandez falsely claimed in his report that Ms. Williams had observed the incident and took no action.

38.    Moreover, there were other security officers present in the area at the time who received no disciplinary action, despite the fact that they were in the same proximity. According to the video footage viewed by Plaintiff Williams, she (Plaintiff Willams) was standing next to another officer who was looking in the same direction that she was. However, Plaintiff Williams was the only officer who was disciplined for failing to take any action (despite not having witnessed the actual incident). Contrary to that direct evidence, Defendant Hernandez falsely concluded that Plaintiff Williams had violated workplace policies and procedure in order to justify and validate the written disciplinary action issued by his co-defendant intis matter (Defendant Castra) to Plaintiff Williams.

39.    These actions of Defendant Castro and Defendant Hernandez were retaliation against Ms. Williams for her prior Charge and this lawsuit.

40.    In December 2024, Plaintiff Willams timely filed a Charge of Discrimination, alleging retaliation for engaging in protected activity under Title VII in connection with retaliation that she has experienced subsequent to the filing of this lawsuit, including the disciplinary actions taken against her. The EEOC issued a Notice of Right to Sue on that charge on or about March 31, 2025, authorizing Plaintiff Williams to pursue this claim in this matter.

## CAUSES OF ACTION

### A.    Count One: Hostile Work Environment Harassment (Race) under Title VII (Defendant LaSalle Corrections West, LLC)

41.    Plaintiff repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

42.    Plaintiff alleges that Defendant LaSalle, as her employer, subjected her to a racially hostile work environment in violation of § 42 U.S.C. § 2000e-2 *et seq*.

43.    Plaintiff is a member of a protected class (Race: Black). Plaintiff was subjected to unwelcome and hostile verbal conduct of a racial nature which continued throughout her employment. 42 U.S.C. § 2000e(f).

44.    Defendant LaSalle is an employer within the meaning of Title VII. 42 U.S.C. § 2000e(b).

45.    All conditions precedent to filing this action for discrimination under federal law have been met.

46.    Defendant LaSalle, by and through the actions of its employee managers and supervisors, violated Title VII, as amended, by harassing Plaintiff and/or creating a racially hostile work environment, and/or discriminating and/or retaliating against Plaintiff in connection with compensation, terms, conditions or privileges of employment because of her race.

47.    Defendant LaSalle, by and through the actions of its employee managers and supervisors, maliciously and recklessly violated its own established rules and procedures to inflict pain and suffering upon Plaintiff.

48.    Defendant LaSalle allowed a racially hostile work environment that targeted Black employees to persist.

49.    Plaintiff complained about the racially-charged misconduct in accordance with Defendant LaSalle's policies and procedure but her complaints were ignored and Defendant LaSalle failed or refused to investigate. Defendant LaSalle failed to exercise reasonable care to prevent the aforementioned described racial harassment and hostile work environment from occurring.

50.    Plaintiff would not have been subjected to the harassment but for her race, as evidenced by the type of remarks and conduct directed towards her.

51.    The harassment inflicted on Plaintiff was severe and pervasive and altered the terms and conditions of her employment and created a hostile and abusive work environment.

52.    Plaintiff complained of the harassment to human resources in accordance with Defendant LaSalle's policy and procedures. Defendant LaSalle knew or should have known about the harassment and failed to take prompt remedial action.

53.    Defendant LaSalle failed to exercise reasonable care to prevent the aforementioned and described racial harassment and racially hostile work environment from occurring. Defendant LaSalle further failed to exercise reasonable care to correct promptly the aforementioned and described racially harassing behavior.

54.    By the aforesaid acts and omissions of Defendant LaSalle, Plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings

11

and future earning capacity, attorneys' fees, costs of suit and other pecuniary losses not presently ascertained.

55.     As a further direct and legal result of the acts and conduct of Defendant LaSalle, Plaintiff has been caused to and did suffer and continues to suffer severe anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety. Plaintiff does not know at this time the exact duration or permanence of said injuries, but are informed and believe and thereon allege, that some if not all of the injuries are reasonably certain to be permanent in character.

56.     Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. § 2000e-5(k).

57.     Such discrimination and harassment by Defendant LaSalle against Plaintiff was intentional. Accordingly, Plaintiff is entitled to recover damages from Defendant LaSalle for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other nonpecuniary losses.

58.     Further, this discrimination and harassment was done by Defendant LaSalle with malice or with reckless indifference to Plaintiff's federally protected rights. Plaintiffs are therefore also entitled to, and seek recovery of, punitive damages.

59.     Plaintiff requests relief as described in the Prayer for Relief below.

### B.     Count Two: Retaliation Under Title VII
### (Defendant LaSalle Corrections West, LLC)

60.     Plaintiff repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

61.     Plaintiff has satisfied all jurisdictional prerequisites in connection with this claim under Title VII.

62. Plaintiff engaged in protected activity by, among other things, complaining about the harassment and discrimination based on race (on behalf of herself and others) to LaSalle's managers and supervisors, including Defendant Johnson, and filing a charge with the EEOC.

63. Plaintiff reasonably believed the situation involving Defendant LaSalle's employee managers and supervisors constituted unlawful discrimination on the basis of race and a hostile environment.

64. As a result of Plaintiff's reporting of the discriminatory and harassing misconduct and the filing and prosecution of the claims in this lawsuit, Plaintiff suffered adverse action. In particular, as a result of her protected activity, Plaintiff was further targeted for harassment and retaliation, including disciplinary warnings, suspensions, and/or termination.

65. Defendant LaSalle, through the illegal actions of its employee managers and supervisors, retaliated against Plaintiff by materially altering the terms and conditions of her employment.

66. There was a causal connection between Plaintiff's participation in protected activities and the adverse employment actions Defendant LaSalle taken against Plaintiff. But for the fact that the Plaintiff engaged in these protected activities, Plaintiff would not have suffered the adverse employment actions.

67. The employment practices complained of above were intentional.

68. As a result of Defendant LaSalle's retaliatory conduct, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment. Plaintiff has also suffered compensatory damages which were a natural, probable and foreseeable result of Defendant LaSalle's actions.

69.     As a further result of Defendant LaSalle's retaliatory conduct, Plaintiff has suffered nonpecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff seeks compensatory damages under Title VII.

70.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

71.     Plaintiff alleges that Defendant LaSalle, by engaging in the aforementioned acts and by ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard of Plaintiff's rights, welfare, and safety, thereby justifying an award of punitive and exemplary damages in an amount to be determined at trial.

72.     As a result of Defendant LaSalle's acts and omissions as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit, including reasonable expert fees, as provided in Title VII of the Civil Rights of 1964, as amended.

73.     Plaintiff also requests relief as described in the Prayer for Relief below.

**C.     Count Three: Hostile Work Environment Harassment (Race) under Section 1981 (All Defendants)**

74.     Plaintiff repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

75.     Defendants subjected Plaintiff to a hostile work environment in violation of 42 U.S.C. §1981. Plaintiff has been forced by Defendants to work in a hostile environment on account of her race.

76. All Defendants, by and through both the acts and omissions of the Individual Defendants, violated Section 1981 by harassing Plaintiff and creating a hostile work environment as a direct result of Plaintiff's race.

77. The race-based harassment was both subjectively and objectively hostile.

78. Defendants maliciously and recklessly violated its own established rules and procedures to inflict pain and suffering upon the Plaintiff.

79. Plaintiff would not have been subjected to the harassment but for her race, as evidenced by the type of remarks and conduct directed towards her.

80. The harassment inflicted on Plaintiff was severe and pervasive and altered the terms and conditions of her employment and created a hostile and abusive work environment.

81. Defendants failed to exercise reasonable care to prevent the aforementioned behavior and described sexual harassment and sexually hostile work environment from occurring. Defendants further failed to exercise reasonable care to correct promptly the aforementioned and described sexually harassing behavior.

82. By the aforesaid acts and omissions of Defendants, Plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings and future earning capacity, attorneys' fees, costs of suit and other pecuniary losses not presently ascertained.

83. As a further direct and legal result of the acts and conduct of Defendants, Plaintiff has been caused to and did suffer and continues to suffer severe anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety. Plaintiff does not know at this time the exact duration or permanence of said injuries, but is informed and believes, and thereon alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

84.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

85.     Plaintiff alleges that the Defendants, through omissions and by actually engaging in the aforementioned acts and/or in ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard of the rights, welfare and safety of Plaintiff, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

86.     As a result of Defendants' conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as allowed by law.

87.     Plaintiff also requests relief as described in the Prayer for Relief below.

### D.     Count Four: Retaliation Under Section 1981
### (Defendant LaSalle Corrections West, LLC)

88.     Plaintiff repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

89.     Plaintiff engaged in protected activity by, among other things, complaining about the racial harassment of Defendant's employee managers and supervisors (on behalf of herself and others), participating in the investigation process for those complaints, and filing and prosecuting the claims in this lawsuit.

90.     Plaintiff reasonably believed the situation involving Defendant LaSalle's employee managers and supervisors constituted unlawful discrimination and harassment on the basis of race and a racially hostile work environment.

91.     Plaintiff suffered adverse employment action. In particular, and in retaliation for her above-described protected activity, Plaintiff was further targeted for harassment and retaliation, including disciplinary warnings.

92.     The employment practices complained of above were intentional.

93.     Defendants' actions constitute unlawful retaliation under Section 1981. Specifically, Plaintiff previously opposed racially discriminatory practices and submitted complaints and/or participated in official investigations and proceedings regarding that complaint of racial harassment. But for Plaintiff's participation in these protected activities, she would not have suffered the adverse employment action/disparate treatment in the terms and conditions of her employment with Defendant.

94.     Plaintiff alleges that there was a causal connection between the participation in the protected activities described above and the adverse employment decisions made against Plaintiff. But for the fact that Plaintiff engaged in these protected activities, she would not have suffered the adverse employment actions.

95.     As a result of Defendant's retaliatory conduct, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment. Plaintiff has also suffered compensatory damages which were a natural, probable and foreseeable result of Defendant's actions.

96.     As a further result of Defendant's retaliatory conduct, Plaintiff has suffered nonpecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Because of these losses, Plaintiff seeks compensatory damages under Section 1981.

97.     Defendants' actions were done with malice and/or with reckless indifference to Plaintiff's protected rights. Plaintiff is thereby entitled to punitive damages under Section 1981.

98.     Plaintiff also seeks reasonable attorneys' fees and court costs, including reasonable expert fees, as allowable by law.

**DAMAGES**

99.     Plaintiff seeks actual, compensatory, and punitive damages.

100.    Defendants' actions were done with malice and/or with reckless indifference to Plaintiff's protected rights. As a result of Defendants' intentional discrimination and other unlawful acts described above, Plaintiff has suffered and will continue to suffer actual and compensatory damages, including but not limited to lost earnings, expenses for reasonable psychological and medical care (past and future), mental anguish, humiliation, and emotional distress.

101.    The conduct, statements, acts and/or omissions described hereinabove were committed knowingly, in that Defendants had actual awareness of the unfairness of such acts, practices, and/or omission.

102.    As a result of such acts, practices, and/or omissions, Plaintiff sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish for which Plaintiff seeks to recover in an amount in excess of the minimum jurisdictional limits of this Court.

103.    The acts and omissions of Defendants complained of hereinabove were committed knowingly, willfully, intentionally, with actual awareness, and with specific intent. In order to punish Defendants for such unconscionable acts or omissions and to further deter such acts or omissions in the future, Plaintiff also seeks recovery for exemplary/punitive damages as authorized by law.

**JURY DEMAND**

104.    Plaintiff has demanded a trial by jury as to all issues.

18

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kim Latrice Williams respectfully requests that on final trial, judgment be granted against Defendants LaSalle Corrections West, LLC d/b/a Prairieland Detention Center, Jimmy Johnson, Leandro Hernandez, and Armando Castro, awarding Plaintiff the following:

a.  Back pay, including but not limited to, lost wages and other employment benefits;

b.  Front pay and benefits;

c.  Actual damages;

d.  Compensatory and/or punitive damages, in the maximum amount allowed by law;

e.  Prejudgment and post-judgment interest, in the maximum amount allowed by law;

f.  Attorneys' fees, expert fees, and costs of suit; and

g.  Such other and further legal and equitable relief to which Plaintiff may be justly entitled.

Respectfully submitted August 5, 2025.

/s/ Kevin M. Duddlesten_____
Texas Bar No. 00793644
DUDDLESTEN LAW GROUP, PLLC
4347 W Northwest Hwy Ste 130, PMB 325
Dallas, TX 75220
Phone: (214) 833-5228
Facsimile: (469) 457-6785
Email: kevin@duddlestenlawgroup.com

**ATTORNEYS FOR PLAINTIFF**

19

## **CERTIFICATE OF SERVICE**

I certify a true and correct copy of the foregoing document was filed electronically on August 5, 2025. Parties may access this filing through the Court's system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ Kevin M. Duddlesten
Kevin M. Duddlesten

20